UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **LAVELLA NASH,** | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 4:19-cv-02027-SNLJ |
| | ) |
| **ANDREW M. SAUL,** | ) |
| **Commissioner of the Social Security** | ) |
| **Administration,** | ) |
| | ) |
|       **Defendant.** | ) |

**MEMORANDUM AND ORDER**

The Commissioner of the Social Security Administration denied plaintiff Lavella Nash's applications for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Nash now seeks judicial review on her Title XVI claim. The Commissioner opposes the motion. The issues being fully briefed, and for the reasons set forth, this Court will **AFFIRM** the Commissioner's decision.

**I.     Procedural History**

Nash's application was denied at the initial determination level.  She then appeared before an Administrative Law Judge ("ALJ").  The ALJ found Nash is not disabled because her symptoms were not supported by the medical evidence available. Nash then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration, which was denied.  Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.  Nash now

seeks review by this Court pursuant to 42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3).

## II.     Disability Determination—The Five-Step Framework

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."

2

*Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" (RFC) to perform his or her past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as what the claimant can still do despite his or her physical or mental limitations." *Gann v. Berryhill*, 864 F.3d 947, 951 (8th Cir. 2017); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging

3

for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

### III. The ALJ's Decision

At Step One, the ALJ found Nash had not engaged in substantial gainful activity since December 28, 2015. (Tr. 23). At Step Two, the ALJ found Nash suffers from six medically determinable impairments: (1) fibromyalgia; (2) degenerative disc disease; (3) asthma; (4) obesity; (5) bipolar disorder; and (6) anxiety disorder with agoraphobia. (Tr. 23). At Step Three, the ALJ concluded Nash does not have an impairment or combination

4

of impairments that meets or equals one of the presumptively disabling impairments listed in the regulations. (Tr. 24-27).

Next, in beginning the analysis of Step Four, the ALJ determined Nash's RFC.[1] The ALJ found that Nash

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant should: (1) avoid more than occasional use of her bi-lateral upper extremities above shoulder level; (2) avoid more than occasional stooping, kneeling, crouching, or crawling; (3) avoid ladders, ramps, and scaffolds; (4) avoid working at unprotected dangerous heights and around unprotected dangerous machinery; (5) avoid concentrated exposure to noxious fumes, odors, dusts, or gases and extreme heat, cold, or humidity; (6) be limited to simple or repetitive tasks with no close interaction with the public.

(Tr. 27). As part of this determination, the ALJ found Nash's allegations about her physical and mental symptoms' intensity, persistence, and limiting effects were not consistent with the medical records when considered as a whole. (Tr. 30). The ALJ remarked that Nash's subjective complaints of "constant and overwhelming" pain did not comport with the medical records demonstrating "consistently reported relief of pain following an injection." (Tr. 30). The ALJ highlighted the "relatively conservative" nature of Nash's treatments, with there being no recommendation by doctors for "more invasive procedures" beyond periodic spinal injections. (Tr. 31). Regarding her mental impairments, the ALJ noted some support for limiting Nash's social interactions, but found that she otherwise retained the ability to "manage her own behavior and needs and

---

[1] Determining claimant's RFC is "essential to properly completing steps four and five." *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). However, the RFC is determined at step four—a point in which the burden of proof rests with claimant. *See Scott v. Berryhill*, 855 F.3d 853, 855 (8th Cir. 2017); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

5

to exercise appropriate judgment." (Tr. 32). In sum, while the evidence supported some of the limitations urged by Nash, the ALJ found Nash was not so profoundly limited as to require an RFC greater than the one chosen—all things considered as a whole. (Tr. 36).

Having made an RFC determination, the ALJ continued on through Step Four to determine whether Nash could perform her past relevant work in light of her designated RFC. The ALJ determined Nash is unable to perform any past relevant work. (Tr. 36-37).

At Step Five, the ALJ analyzed whether Nash can successfully adjust to other work. The ALJ noted that if Nash could perform all or substantially all of the exertional demands at a given level under the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. Part 404, Subpart P, Appendix 2, then the Grids would direct a conclusion of whether Nash was "disabled" or "not disabled." The ALJ acknowledged, however, that additional limitations impede Nash's ability to perform work at all or substantially all of the assigned level.  Thus, the ALJ relied on vocational expert (VE) testimony to determine the extent to which these limitations erode Nash's occupational base to perform "unskilled work at all exertional levels."  The VE testified Nash could perform work as a "mail sorter," "order caller," and "photocopy machine operator" even after considering all of the limitations in Nash's RFC. (Tr. 38).  The ALJ then found these jobs exist in significant numbers in the national economy and concluded Nash is not disabled. (Tr. 38).

**IV.    Standard of Review**

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.  42 U.S.C. §§ 405(g); 1383(c)(3).

6

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

**V.   Discussion**

Nash seeks remand on three issues, all are related to the process undertaken to formulate her RFC. Each is addressed in turn.

**A.  The ALJ Properly Discounted Nash's Subjective Pain Complaints**

First, Nash argues the ALJ erred when discounting her subjective complaints of pain. She explains that she is "not able to walk very long without being in pain," and asserts the ALJ was heavy-handed in concluding her spinal injections provide the sort of relief necessary to work. Nash points out how the injections would only work for about a week. She acknowledges her "conservative treatment," but says this is not inconsistent with the disabling pain she says she experiences in between such treatment efforts.

7

It is not the case, here, that the ALJ simply ignored Nash's subjective complaints of pain. The ALJ remarked how the objective evidence *did* show spinal complications that manifested in pain and functional limitations. (Tr. 29). What the ALJ concluded was that "while there is some evidence to support [Nash's] allegations of stiffness and tenderness, the medical records ***do not support the intensity alleged***." (Tr. 29 (emphasis added)).

An ALJ is not required to adopt, wholesale, the subjective complaints of one seeking disability benefits. Quite to the contrary, the ALJ is required to evaluate the "objective medical evidence" and "other evidence" relating to things such as the claimant's daily activities, duration, frequency, and intensity of pain, and the effectiveness of treatment. *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019). In other words, the ALJ is tasked with considering the big picture—subjective, objective, and other evidence combined—and must synthesize that information to reach a determination based on so-called "substantial evidence." *Id*. at 771. Thus, in *Swink*, the Eighth Circuit found the ALJ did not err in discounting the alleged intensity and persistence of the claimant's subjective pain allegations where objective diagnostic data shows only "mild" spinal irregularities and "other" evidence, i.e. claimant's daily activities, made clear that he was still capable of performing light chores. *Id*.

Here, the ALJ was faced with the problem of evaluating Nash's fibromyalgia condition—a "difficult" and "elusive" diagnosis that requires careful scrutiny. *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir. 2009). On the one hand, there is a bevy of records indicating generally benign-to-mild physical abnormalities and unremarkable physical

8

appearances including a "normal" gait, full strength in "both upper and lower extremities," and "normal ranges of motion." In addition, to the degree pain did manifest in observable ways, the records show remarkable improvement—up to an "80-90% reduction in [] symptomology"—following injection treatments. (Tr. 287, 293, 312, 372, 402, 409, 412, 417, 422, 426, 428, 430, 432, 434, 457-458, 459-460, 462-463, 473, 478, 483, 490, 495-496, 500, 504-505, 510, 516-517, 522, 528, 534, 539-540, 543, 549-550, 555, 563-564, 569-570, 573-574, ). But, clearly the treatments were temporary; the very same records would repeatedly describe self-reported "joint pain" of fluctuating severity and a persistent "painful" range of motion. In fact, for many months rhizolysis—a specialized "outpatient procedure" aimed at relieving pain from spinal nerves—was contemplated and described as a possible "long-term" solution, though it was apparently never performed. (Tr. 415, 420, 432). In summing the situation up, one physician's note shrewdly described a so-called "vague tenderness" at "various muscle groups" on the "back and extremities." (Tr. 241). During the underlying hearing, Nash, herself, admitted that she "used to go get x-rays and they"—meaning her doctors—"kept saying 'nothing's wrong, nothing's wrong,' so they decided it was fibromyalgia because after awhile it would just go away." (Tr. 54-55).

In evaluating her pain, the question in this case is not whether Nash suffers from fibromyalgia at all—clearly her doctors think she does, as longitudinally mapped out in the record. The question, rather, is whether the *intensity* of that condition prevents Nash from working. *See Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir. 1999). Indeed, "not every diagnosis of fibromyalgia warrants a finding that a claimant is disabled." *Perkins v.*

9

*Astrue*, 648 F.3d 892, 900 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." *Id*.

Nash wants to point to her subjective complaints, and it is notable that the record also seems to support that her daily activities are appreciably limited by her pain—at least as she describes the situation to the ALJ and her doctors. (Tr. 60-61, 320). But, "[i]mpairments that are controllable or amendable to treatment do not support a finding of total disability." *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (relying on seventy-five trigger point injections that were successful in relieving pain over a two-year period as reason to find that claimant's fibromyalgia pain was not disabling). And the record, here, amply supports the efficacy of Nash's treatment protocols; her doctors describe a remarkable level of improvement. It is also clear, from her own testimony, that Nash is capable of doing several daily activities—cooking, grocery shopping, and attending her children's school functions among them. (Tr. 61-63). It is further notable that, "while the only known treatment for fibromyalgia consists of conservative treatment," Nash's doctors never escalated her treatment within that limited sphere to try new things like the much-contemplated rhizolysis procedure. *Edwards v. Saul*, 2020 WL 674010 at *7 (E.D. Mo. Feb. 11, 2020). The records simply does not reflect pain severity of the sort that is outright disabling.

The designated RFC both recognized and embraced Nash's fibromyalgia, limiting her to no more than "occasional use of her bi-lateral upper extremities above shoulder level" and "occasional stooping, kneeling, crouching, or crawling." Given Nash's self-

professed daily activities, the effectiveness of her treatment (even if temporary and requiring long-term repeated injections), and the seeming lack of urgency by doctors to elevate care into more than routine injections, the Court cannot say the ALJ erred in his determination. There is, simply put, nothing in the record that compels the ALJ to place more restrictive limitations than those that were included in the chosen RFC. *See Perkins*, 648 F.3d at 901 (ALJ did not err in discounting claimant's pain allegations where her daily activities, treatment records, and situational onset factors militated against the severity otherwise described by claimant); *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007) (ALJ properly considered claimant's fibromyalgia, taking it into account in the RFC but finding it not disabling based on successful treatment efforts and inconsistent daily activities).

### B. The ALJ Sufficiently Developed the Record as to Nash's Physical Limitations

Next, as to physical limitations, Nash says "there is no RFC that explains how the cervical MRI findings, lumbar MRI findings, fibromyalgia, asthma, and obesity effect (sic) the plaintiff's specific abilities to sit, stand, lift, carry, push and pull." Thus, it "appears that the ALJ has taken those raw medical findings and somehow decided how they affect the individuals functioning without the help of a medical professional." In essence, Nash argues the ALJ failed to sufficiently develop the record as to her physical limitations.

Nash's argument about the scope of her ability to sit, stand, lift, carry, push, and pull is curious because, while she seems to criticize the ALJ for formulating an RFC on

11

those issues out of whole cloth, the ALJ clearly relied on Nash's own testimony in conjunction with the medical records to formulate the RFC. Nash's argument simply ignores the record.

Nash expressly testified how she has difficult lifting her arms up to fix her hair. (Tr. 61). She also testified how she was capable of bending, though she might need help to do so. (Tr. 61). Nash is also capable of cooking, traveling to the grocery store, and attending school events—events that would presumably include periodic moments of sitting, standing, lifting, carrying, and the like. (Tr. 61-63). And it was clearly in the ALJ's mind that injection treatments were effective and that symptomology was almost completely improved thereafter—again, many records indicated normal gait, normal range of motion, and normal extremity strength. Finding this mixture of evidence credible, the ALJ fashioned an RFC that limited Nash to "occasional use of her bi-lateral upper extremities above shoulder level" and "occasional stooping, kneeling, crouching, or crawling," but went no further because the record supported nothing further.

The RFC was not created from whole cloth, and there is, of course, "no requirement that an RFC finding be support by a specific medical opinion" in any event. *Hensley*, 829 F.3d at 932. The ALJ synthesized Nash's testimony and corroborative medical records and, thus, did not err in formulating the physical limitations attributed in Nash's RFC.

## C.  The ALJ's Decision is Supported by Substantial Evidence

Finally, as to her mental limitations, Nash takes issue with the fact that the ALJ afforded "significant weight" to a one-time, non-examining doctor who rendered an

12

opinion years before [Nash]'s hearing." Nash argues the RFC is inappropriately supported by this one opinion given that her treating doctor was, by contrast, afforded only "partial weight."[2] Nash says this does not constitute "substantial evidence" sufficient to support the designated RFC.

There is no error in giving great weight to the opinions of a "one-time, non-examining doctor" over those of a treating physician. *See Gregory v. Commissioner*, 742 Fed.Appx. 152, 155 (8th Cir. 2018). This is because, ultimately, an RFC determination is "an administrative determination reserve to the Commissioner"—not a medical determination reserved to doctors. *Cox v. Astrue*, 496 F.3d 614, 619 (8th Cir. 2007); *see also Twyford v. Commissioner*, 929 F.3d 512, 518 (8th Cir. 2019). Thus, an ALJ is "not limited to considering medical evidence exclusively," *Cox*, 496 F.3d at 619, and instead has the latitude to "discount a treating physician's RFC" where it is "inconsistent[] with other evidence." *Davidson v. Astrue*, 501 F.3d 987, 991 (8th Cir. 2007).

That is what occurred, here. Despite Nash's criticisms, this is not a case in which the RFC was determined solely upon the opinion of a non-examining, consulting doctor. *See Walker v. Commissioner*, 911 F.3d 550, 553 (8th Cir. 2018) ("the opinion of a consulting physician who examines a claimant once or not at all does not generally

---

[2] Nash argues the opinions of her treating physician, Dr. Singh, were afforded only "little weight." This is incorrect according to the record. The ALJ gave "little weight" to Dr. Singh's Global Assessment of Functioning ("GAF") analysis because "GAF scores are one-time assessments" that have little to say about "the claimant's overall functioning over time." (TR. 35). This Court has repeatedly recognized the "limited evidentiary value" of GAF scores when considered alone. *See, e.g., Washington v. Saul*, 2020 WL 2130123 at *3 n.3 (E.D. Mo. May 5, 2020). Thus, the ALJ did not err in discounting the GAF score. But, as to remainder of Dr. Singh's opinions regarding Nash's "ability to function," they were expressly given "partial weight." (Tr. 36).

13

constitute substantial evidence"). Rather, the ALJ gave "great weight" to the consulting opinions of Dr. Joan Singer because they were "consistent with the [other] evidence in the record." (Tr. 35). Namely, the ALJ agreed with Singer that the evidence supported that Nash has "intact memory and showed adequate consistence and pace" despite her mental impairments. (Tr. 35). In fact, these opinions mirrored those of Dr. Singh, Nash's treating physician, who concluded Nash has normal memory, average intelligence functioning, fair insight, clear and spontaneous speech, and a calm, alert, and cooperative demeanor. (Tr. 357-358). Singh was credited for these opinions by the ALJ. (Tr. 36). "Partial weight" was given to the totality of Singh's opinions only because the ALJ rejected Singh's other opinions involving a GAF assessment, which this Court has recognized as having "limited evidentiary value." *See, e.g., Washington v. Saul*, 2020 WL 2130123 at *3 n.3 (E.D. Mo. May 5, 2020).

As for the opinions of another consultative medical source, Alison Burner, her opinions about Nash's inability to maintain employment were partially discounted because they relied "heavily" on "the claimant's [own] statements, which are largely inconsistent with the record." (Tr. 34). It is not error to discount a physician's opinions that rely too heavily on a claimant's own subjective reports of symptoms and limitations. *See McDade v. Astrue*, 720 F.3d 994, 999 (8th Cir. 2013). Otherwise, the remainder of Burner's opinions were credited to the extent they, once again, comported with the total record—Singer, Singh, cumulative treatment notes, and Nash's testimony—that Nash suffered only "mild" impairments to concentration, pace, and persistence and "moderate" social impairments. (Tr. 34, 321).

14

There is nothing about the ALJ's weighing of medical opinions in this case to suggest he was basing the chosen RFC entirely on the opinions of a "one-time, non-examining doctor." In the important matters of Nash's cognitive and social abilities, the various opinions were generally in agreement. Accordingly, the ALJ did not err.

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017). Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED** and plaintiff Lavella Nash's complaint (ECF #1) is **DISMISSED with prejudice**. A separate judgment accompanies this Order.

So ordered this 18th day of May 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE